UNITED STATES of America, Plaintiff,

v.

David Sylvan FINE, Defendant.

No. 70–CR–126 W.D.

United States District Court,
W. D. Wisconsin.

May 4, 1976.

See also, D.C., 413 F.Supp. 728.

David C. Mebane, U. S. Atty., Madison, Wis., for plaintiff.

Shellow & Shellow, by James Shellow, Stephen Glynn, Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

In a separate decision, I ruled on several motions of the defendant David Fine to dismiss various counts of the indictment in this action. The defendant and the government have also filed a number of motions which deal with discovery matters, including a motion for a bill of particulars. The defendant has also submitted a motion to suppress certain evidence. This decision will deal with these motions. Several other motions were filed by the defendant, but the court has been informed that these motions have been voluntarily resolved by the government and the defendant, withdrawn by the defendant, or otherwise held in abeyance at the request of the defendant.

## MOTIONS RELATING TO VOICE EXEMPLARS

The government has filed a motion for an order directing the defendant to furnish voice exemplars in the form of a telephone communication recorded by the Madison police department on August 24, 1970, warning of the existence of a bomb in

the Army Math Research Center. The government has stated that the purpose of the requested exemplars is "for use as a comparison in determining the identity of the caller involved materially in the crimes charged."

The defendant filed a motion for disclosure, to determine whether the government already possessed recordings of the defendant's voice, and in response to that motion the government has stated that aside from the tape recorded telephone message with which the exemplars would be compared, "there are no known tape or other voice recordings of defendant Fine within the possession of the Government." The defendant has filed a motion for a pretrial evidentiary hearing to determine the admissibility of voice spectrograms, commonly referred to as "voiceprints," prior to any ruling by this court on the government's motion for production of voice exemplars. The government's motion for production of voice exemplars will be granted, and the defendant's motion for a prior evidentiary hearing will be denied.

The defendant raises fourth and fifth amendment objections to an order compelling him to produce voice exemplars, but he admits in his brief that these objections have been conclusively rejected in *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), and *United States v. Rogers*, 475 F.2d 821 (7th Cir. 1973). The defendant's remaining objection is that the use of voice spectrograms as a voice identification procedure is insufficiently established to have gained general acceptance among speech scientists, that testimony relating to such a procedure is therefore not admissible at trial, and that accordingly, voice exemplars would not be relevant at trial and should not be produced.

The defendant's objections to the production of voice exemplars are without merit, and his request for a determination of the admissibility of voice spectrogram evidence is premature. As the government notes in its brief:

"Whether or not the question of admissibility of voice spectrogram evidence will

arise at the time of trial is dependent on the Government's decision to try to admit expert opinion on this subject. Such a decision by the Government cannot be made until expert analysis is conducted.

.     .     .     .     .

"By waiting until after the Government indicates an intention to use any expert opinion based on voice exemplars, this Court may avoid a lengthy pre-trial hearing. For example, the possibility exists that the Government may not intend to introduce any testimony concerning voice analysis. Furthermore, by waiting until expert analysis is completed, a full record of the procedures utilized by any experts can be presented to this Court in any evidentiary hearing concerning the scientific validity of voice spectrograms."

The government's motion for an order requiring the defendant to produce voice exemplars will be granted, and the defendant's motion for a prior evidentiary hearing will be denied.

### MOTION FOR PRODUCTION OF STATEMENTS OF ALLEGED CO–CONSPIRATORS

■ The defendant has filed a motion for the entry of an order requiring the government to produce for inspection and copying any and all statements allegedly made by co-conspirators, whether indicted or not, and whether made during the pendency of the alleged conspiracy and in furtherance of it, or made after the termination of the alleged conspiracy to law enforcement officials. This motion will be granted.

Under Rule 801(d)(2)(E), Federal Rules of Evidence, the statement of a co-conspirator of a party, made during the course and in furtherance of a conspiracy, and offered against that party, is not inadmissible as hearsay. Therefore, the defendant contends, statements of alleged co-conspirators, for all practical purposes, become the statements of the defendant himself and should be discoverable by the defendant as though they were his own statements. See Rule 16(a)(1)(A), Federal Rules of Criminal Procedure. This view of the relationship be-

tween Rules 801(d)(2)(E) and 16(a)(1)(A), was rejected in *United States v. Percevault*, 490 F.2d 126 (2d Cir. 1974).

However, in turning down the defendant's analysis the court in *Percevault* applied reasoning which is applicable only to co-defendants or co-conspirators who are prospective government witnesses at trial. This reasoning is similar to that in *United States v. McMillen*, 489 F.2d 229, 231 (7th Cir. 1972), which states:

> "The [Jencks] Act limits the prohibition to Government witnesses or prospective Government witnesses. . . . We agree with respondent that defendants are entitled to the statements of any other co-defendants."

Accordingly, the defendant's motion for the production of statements of alleged co-conspirators, other than those who are prospective government witnesses, will be granted.

## MOTIONS FOR THE PRODUCTION OF GRAND JURY TESTIMONY AND OF WITNESSES' STATEMENTS

■ The defendant has filed a motion for an order "requiring the Government to provide, substantially prior to trial, all statements of persons that the Government intends to call as witnesses at the trial." A similar motion for the production of a transcript of the testimony of those witnesses who appeared before the grand jury has been filed.

Title 18, United States Code, § 3500, provides that the statements of witnesses need not be produced until such time as the witnesses have testified. The government has stated that it will "agree to the procedure utilized in the case of *United States v. Balistrieri*, 346 F.Supp. 366 [336], 388 [338] (E.D.Wis.1972), by furnishing copies of the witnesses' statements twenty-four (24) hours prior to their appearance on the witness stand." In *Balistrieri*, the government was directed to produce such statements for the defendants' inspection and copying 24 hours "before the start of the trial." 346 F.Supp. at 338. Where the trial is a short one, the 24 hour period is substantially the same whether it runs from the start of the trial or before the witness is called to testify. In the case at bar, the time span may be significantly different, and the better rule is the measurement of 24 hours before the witness is called to testify.

The defendant requests that the *Balistrieri* procedure be utilized by the court in this action, but that it be applied earlier than in *Balistrieri*, due to the large number of witnesses and the complexity and length of the trial expected in this action. I am not persuaded that the trial management technique utilized in *Balistrieri* is inadequate to the needs of the defendant in the case at bar. Accordingly, the government will be directed to produce all statements of persons that the government intends to call as witnesses 24 hours before the witness is called to testify.

Grand jury testimony of government trial witnesses on the subjects about which they testified at the trial is available to a defendant as a matter of right. *United States v. Amabile*, 395 F.2d 47, 53 (7th Cir. 1968); *United States v. Cullen*, 305 F.Supp. 695 (E.D.Wis.1969). As a matter of sound trial management, grand jury testimony of prospective government witnesses should be disclosed 24 hours in advance of the calling of the witness. *Balistrieri* and *Cullen, supra*.

However, the defendant seeks not only the grand jury testimony of prospective government witnesses but that of all witnesses before the grand jury—"those witnesses who appeared before the grand jury and upon whose testimony this indictment was returned." Furthermore, the defendant seeks disclosure substantially earlier than is provided in *Balistrieri* and *Cullen*. None of the cases upon which the defendant relies suggests that a defendant is entitled to a transcript of the testimony of all grand jury witnesses, or to grand jury transcripts substantially in advance of trial.

## MOTION TO PERMIT COPYING OF DISCOVERY MATERIAL

■ The defendant has filed a motion to permit him to copy discovery material fur-

nished to him by the plaintiff. The government opposes "a broad court order directing the unlimited copying of Federal investigative files," but it has suggested no governmental interest which would be impaired by allowing defendant to copy any material disclosed to him through the discovery process in this action, and I am aware of none. Such copying, of course, would be undertaken at the defendant's expense and during the government's normal working hours. For the above reasons, the defendant's motion to permit copying of discovery material will be granted.

## MOTION FOR A PROTECTIVE ORDER

■ In its response to the defendant's motion to dismiss the indictment in this action, the government requested a protective order providing:

"All material disclosed to the defendant and his counsel (present members of the firm of Shellow and Shellow, Milwaukee, Wisconsin) pursuant to this Order be limited in use to the preparation and presentation of the defense in this particular criminal action, and that such material shall not be disclosed to any person not engaged in or necessary to the preparation of the defense."

The court has been informed that pending a decision on the government's request, the defendant has agreed to observe the above limitations on use of discovery material, although he opposes entry of such a protective order.

In support of its request, the government argues that a protective order is necessary "in order to protect the legitimate Government interests involved, and the rights of innocent third persons," and it notes that a similar protective order was entered in *United States v. Donald W. Wahlin*, No. 74–CR–14 (W.D.Wis.), on April 18, 1975. I find *Wahlin* unpersuasive authority for the issuance of a broad protective order in this action, since the order in that case describes the materials involved as "private letter rulings and technical advice memoranda" directed to third parties by the internal revenue service and as containing confidential commercial information. In the case at bar, the government has not indicated what legitimate ·government interests would be impaired, nor has it suggested in what way the rights of third parties would be damaged, were a protective order not entered in this action.

The government has noted that its files include "reports concerning on-going fugitive investigations relating to defendants Leo Burt and Dwight Armstrong," and to the limited extent that the government may be required to disclose portions of those reports, I am persuaded that a protective order is justified. As to other discovery materials, I do not believe that a protective order has been justified, and one will not be entered.

## MOTION TO SUPPRESS

The defendant has filed a motion to suppress as evidence all property seized pursuant to a search warrant dated and executed on September 16, 1970, plus any leads derived therefrom. The defendant contends that the affidavit in support of the search warrant is insufficient to set forth probable cause to believe that there was concealed on the property searched certain evidence relating to the offense set forth in the search warrant itself. He further contends that the information set forth in the affidavit was illegally secured and cannot form the basis for the issuance of a valid search warrant.

The search warrant describes the location of a black trunk and a tan duffel bag in the basement of a certain residence in Madison and states that the magistrate has reason to believe that in such property are concealed "books, notebooks, and notes or other records which relate to the manufacturing of various explosives, including a type manufactured from fertilizer and fuel oil, which are evidence of a crime which involved the use of explosives and occurred on the University of Wisconsin campus at Sterling Hall on August 24, 1970."

The affidavit in support of the warrant states that Edward H. Bull, supervisor of

mine safety, state department of industry, labor and human relations, identified photographs of Leo Burt and David Fine as persons who had contacted him on July 13, 1970, regarding the use of fertilizer and fuel oil as an explosive device. Mr. Bull stated that he provided them with information, including an "Explosive Notebook" of the state of Wisconsin, and that the two men appeared to be compiling information.

The affidavit also stated that the affiant interviewed Gene Dworetzky on September 14, 1970, and that Mr. Dworetzky informed him that he had possession of the property described in the warrant at the location described in the warrant, that he had on occasion opened the duffel bag and observed notebooks contained therein, and that the property had been left with him by David Fine on or about August 7, 1970.

The defendant contends that there is no reason, on the face of the affidavit, to believe that the notebooks in the duffel bag would relate to explosives and that the timing of the interview, the leaving of the duffel bag, and the seizure was not such as to indicate that any notebooks in the bag were related to the interview with Mr. Bull. I believe each of these contentions is without merit.

The statement of Mr. Dworetzky that the property was left with him by the defendant, that he had on occasion opened the bag and observed notebooks contained therein, and that the property was being kept in a basement suggests that whatever materials were in the trunk and bag on August 7, 1970, remained there at the time of the search. Furthermore, I do not believe that the period of time between the interview with Mr. Bull, when the defendant appeared to be compiling information on explosives and was given a notebook on explosives, and August 7, 1970, when the defendant left the property with Mr. Dworetzky, is so great that it can be said that the knowledge that notebooks were contained in the bag was insufficient to provide probable cause that the notebook and materials being sought by the government were contained therein.

■ Accordingly, I reject the defendant's contention that the search warrant executed on September 16, 1970, was facially invalid.

■ The defendant's challenge to the warrant on the ground that information contained in the affidavit was illegally secured cannot be resolved at this time. The defendant's motion asserts this ground in a conclusory fashion and requests an evidentiary hearing on this matter. The defendant has not provided the court with a statement of the contested facts which necessitate an evidentiary hearing. Should the existence of a factual dispute be demonstrated by the defendant, then the court would be in a position to schedule such a hearing. Until that time, the defendant's motion to suppress will be denied.

## MOTION FOR A BILL OF PARTICULARS

The defendant has filed a motion for a bill of particulars, pursuant to Rule 7(f), Federal Rules of Criminal Procedure, seeking answers to 36 separate particulars, most of which contain multiple categories. The government resists the motion in its entirety, contending that the defendant seeks to obtain evidentiary detail rather than to learn the nature of the accusations so as to defend against them and to be able to plead them in bar to a subsequent prosecution.

In view of the magnitude of the defendant's requests, the following language from *United States v. Tanner,* 279 F.Supp. 457, 473 (N.D.Ill.1967), is appropriate:

"It is clear that the defendants may not force the Government to reveal its entire case, or all of the evidence it hopes to adduce at trial. *Peppard v. United States,* 314 F.2d 623 (8th Cir. 1963)."

While I am tempted by the scope of the defendant's requests, as was the court in *United States v. Ahmad,* 53 F.R.D. 194, 198 (M.D.Pa.1971), "to deny all of them on the ground that such requests could be nothing but a fishing expedition," I will review the individual requests of the defendant and rule thereon.

I note as a preliminary matter that the defendant's motion for a bill of particulars was prepared at a time when the defendant was under the impression that the government would not voluntarily permit much, if any, discovery of the material in its files. The voluntary resolution of several discovery motions by the parties and the court's resolution of the remaining motions in this decision should alleviate the defendant's fears in this regard.

■ Of those particulars addressed to count one of the indictment in this action, I believe that paragraphs A, B, H, T and those described by the defendants as "particularization of plan and individual involvement of each defendant" (paragraphs J, K, L, M, N, O, P, Q, R, S, U, and V) can be described only as requests for evidentiary matter, or in the language of *Ahmad*, "a complete script of the evidence to be offered by the government." 53 F.R.D. at 200. Accordingly, these requests of the defendant will be denied.

■ The remaining particulars addressed to count one deserve to be answered, at least in part. The identities of defendants as to particular objectives of the conspiracy and of unindicted co-conspirators (paragraphs C, D, E, and F) are proper matters for inclusion in a bill of particulars. *Ahmad, supra; Tanner, supra; United States v. Covelli*, 210 F.Supp. 589 (N.D.Ill. 1962). Except for the identity of the actors, the approximate specifications of overt acts as requested in paragraph G should be provided by the government. See *Ahmad, supra* at p. 201; *Covelli, supra* at p. 590. *Ahmad* also supports the defendant's request in paragraph I for an identification of certain property, and this request will be granted. The defendant also seeks in paragraph W the subject matter of the conversation referred to in the first overt act alleged on page 2 of the indictment and the names and addresses of all persons who were present during such conversation and were not identified in the indictment. The following language from *Tanner*, 279 F.Supp. at 477, supports the defendant's request for the names of those present,

which is all that I will require the government to provide:

"Since such conversation was evidently an integral part of the alleged conspiracy, defendants should be told if it is the Government's contention that someone else was present at the meeting, and if so, who. *United States v. Covelli*, 210 F.Supp. 589, 590 (N.D.Ill.1962)."

■ The particulars addressed to count two seek the identification and location of the property injured on August 24, 1970. This type of information was provided in *Tanner, supra,* and I believe it should be provided in this action.

■ The government has agreed to provide the defendant with the names of the persons whose identities are requested in those particulars addressed to count three. I do not believe that it is also necessary for the government to provide their addresses. Therefore, these requests of the defendant will not be granted.

■ I believe that paragraph A of the particulars addressed to count five seeks evidentiary material, as does paragraph B of those particulars. Furthermore, it is apparent that the defendant either has obtained or will obtain from the government its reports on the nature of the destructive device referred to in count five. Therefore, these requests of the defendant will be denied.

In granting certain of the defendant's requests for particulars, it should be noted that I intend to follow the procedure set forth in *United States v. Ahmad,* 53 F.R.D. at 200:

"See *United States v. Tanner, supra,* where it was said, as we say here, that where this court directs the government to supply certain particulars it is not our intention to strictly limit the government's proof at trial, and so, if the government cannot respond in precise terms because it is uncertain as to the facts, the response should be as precise as the government can make it."

CONCLUSION

Therefore, IT IS ORDERED that the plaintiff's motion for an order directing the defendant to furnish voice exemplars be and hereby is granted.

IT IS ALSO ORDERED that the defendant shall furnish voice exemplars in the form of the language quoted in paragraph five of the affidavit in support of the motion for production of voice exemplars. The defendant shall make himself available at a time and place in the western district of Wisconsin chosen by the plaintiff for this purpose.

IT IS FURTHER ORDERED that the defendant's motion for a pretrial evidentiary hearing be and hereby is denied.

IT IS FURTHER ORDERED that the defendant's motion for production of statements of alleged co-conspirators, other than those who are potential government witnesses, be and hereby is granted.

IT IS FURTHER ORDERED that the defendant's motions for the production of grand jury testimony and of witnesses' statements be and hereby are denied. The plaintiff is directed to provide witnesses' statements, including grand jury testimony, to the defendant no less than 24 hours before the witness takes the stand in the trial of this action.

IT IS FURTHER ORDERED that the defendant's motion to permit copying of discovery material be and hereby is granted.

IT IS FURTHER ORDERED that the plaintiff's motion for a protective order is denied, except that material disclosed to the defendant and his counsel and identified by the plaintiff as "concerning on-going fugitive investigations" shall not be disclosed to any person not engaged in or necessary to the preparation of the defense.

IT IS FURTHER ORDERED that the defendant's motion to suppress be and hereby is denied, without prejudice.

IT IS FURTHER ORDERED that as to count one, paragraphs A, B, H, J, K, L, M, N, O, P, Q, R, S, T, U, and V of the defendant's motion for a bill of particulars be and hereby are denied; that paragraphs C, D, E, F and I be and hereby are granted; and that paragraph G, except for the identity of the actors, and paragraph W, except for the substance of the conversation, be and hereby are granted.

IT IS FURTHER ORDERED that as to count two, the defendant's motion for a bill of particulars be and hereby is granted.

IT IS FURTHER ORDERED that as to counts three and five, the defendant's motion for a bill of particulars be and hereby is denied.